UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **CLAY C. PRIETO** | **13-12200** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |
| | |
| IN RE: | CASE NO. |
| **MAGNIFICENT EIGHT, L.L.C.** | **13-12201** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |
| | |
| IN RE: | CASE NO. |
| **D.I.T.O., L.L.C.** | **13-12202** |
| | SECTION A |
| DEBTOR | CHAPTER 11 |

## REASONS FOR DECISION

On August 28, 2014, and September 2, 2014, the following matters came before the Court:

1) Objection to the Proof of Claim of Byard Peck Edwards, Jr.;[1]

2) Third Application for Compensation filed by Robin DeLeo;[2]

3) Second Application for Compensation filed by Markus Gerdes;[3]

4) First Application for Compensation filed by Phillip K. Wallace.[4]

At the conclusion of the hearings, the Court took the matter under advisement.

---

[1] Case no. 13-12200, P-184; case no. 13-12201, P-94; and case no. 13-12202, P-89.

[2] Case no. 13-12200, P-165.

[3] Case no. 13-12201, P-184.

[4] Case no. 13-12202, P-197.

## I. Findings of Fact

The Clay and Roslyn Prieto ("the Prietos") are 100% owners of D.I.T.O., L.L.C. ("DITO"), which owns and operates the restaurant Rips on the Lake.

Magnificent Eight, L.L.C. ("Mag 8") is owned 70% by the Prietos and 30% by DITO. Mag 8 owns a condominium building adjacent to Rips on the Lake.

Mag 8 obtained a construction loan from First Community Bank ("FCB") to build the condominiums.

FCB filed suit against the Prietos, and in October 2008, obtained a judgment against them in the principal sum of $2,104,358.16, plus interest, penalties, late charges, and attorneys' fees.[5] FCB later assigned its judgment to First NBC Bank ("FNBC").

In both the suit by FCB and a suit involving Work Construction Co., Inc., Gregory St. Angelo ("St. Angelo") represented the Prietos.

On June 18, 2012, the Prietos, Mag 8, and DITO entered a Contingency Fee Contract with Byard Edwards ("Edwards") whereby Edwards would represent them as counsel ("Edwards Contract"):

> [I]n connection with a claim derived from any and all transactions involving certain loans and/or litigation arising from the loans between [them] and First Community Bank and/or First NBC Bank and in any way involving Greg St. Angelo and/or any other attorney or individual involved in those transactions including but not limited to First Community Bank v. Clay Prieto and Roselyn Prieto, Docket no. 2008-12583A, 22nd JDC and U.S. District Court, Eastern Division Court of Louisiana in the matter of Work Construction Co. Inc., Debtor v. Magnificent Eight, LLC, Civil

---

[5] *First Community Bank v. Prieto*, 2008-12583, 22nd Judicial District Court, Parish of St. Tammany. *See* Exh. 17.

Action No., 10-1132, Section C-2, Bank No. 07-12344 A, Adversary No. 0901032.[6]

In return, the Prietos, Mag 8, and DITO agreed to pay Edwards "40% of all actual monies or funds recovered or 40% of the reduction of any debts."   The Prietos paid Edwards a $10,000 retainer fee.

On December 12, 2012, Edwards, on behalf of the Prietos and Mag 8, filed a Petition for Damages against FNBC and St. Angelo in the 22nd Judicial District Court for the Parish of St. Tammany ("Original Petition").[7]   The Original Petition names the plaintiffs, contains five (5) short, one- sentence paragraphs, and a short prayer for relief.   It provides as the only cause of action that "Defendants herein committed wrongful acts in St. Tammany Parish damaging plaintiffs herein in an amount that exceeds $50,000.00."[8]

Edwards filed an Amended Petition for Damages ("First Amended Petition") on January 28, 2013, adding FCB as a defendant.   The First Amended Petition incorporates three (3) paragraphs of the Original Petition by reference and adds only:

> Petitioner avers that [FCB] is the original holder of the loan, sold to [FNBC] and also liable in solido for their business decisions that caused damage to Plaintiff's business and personal assets; therefore, Plaintiff Desires to add [FCB] as a defendant in this Petition for Damages.[9]

The Prietos urged another attorney and their friend, Richard Vale ("Vale"), to take a look at the case.   Vale agreed but declined compensation.

---

[6] Exh. 4.  The representation of Mag 8 and DITO was handwritten on the contract and initialed by the parties. The Prietos signed the contract.

[7] Exh. 6.  *Magnificent Eight, L.L.C. v. First NBC Bank*, 2012-16516, 22nd Judicial District Court, Parish of St. Tammany.

[8] *Id*.

[9] *Id.*

FNBC filed an exception of vagueness alleging that the Original and First Amended Petitions failed to state a claim upon which relief could be granted. The Original and First Amended Petitions were vague. Vale drafted and filed a Second Supplemental and Amending Petition ("Second Amended Petition") on June 13, 2013, which was signed by both Vale and Edwards, detailing the alleged facts and causes of action by adding 32 paragraphs.[10] The causes of action were expanded to include bad faith by FCB and malpractice by St. Angelo.

Another attorney friend of the Prietos, William Jones ("Jones"), also agreed to help with their case without compensation. Jones investigated the allegations of the Prietos and prepared a detailed analysis of the damages sustained by the Prietos.

FNBC contended that the claims of the Prietos and Mag 8 were perempted. While Edwards did not agree, Vale and Jones were insistent that this defense must be addressed.

Edwards filed a Third Supplemental and Amending Petition ("Third Amended Petition") on August 13, 2013, adding a cause of action of fraud against St. Angelo.[11]

DITO was not a named plaintiff on any of the state court petitions.

On August 13, 2013, the Prietos,[12] Mag 8[13], and DITO[14] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Prietos were represented by Robin DeLeo ("DeLeo"). Roslyn Prieto has since been dismissed from the case, but DeLeo continues to represent

---

[10] Exh. 6.

[11] *Id.*

[12] Case no. 03-12200.

[13] Case no. 13-12201.

[14] Case no. 13-12202.

Clay Prieto ("Prieto") in his bankruptcy case.  Mag 8 is represented by Markus Gerdes ("Gerdes"),

and DITO is represented by Phillip K. Wallace ("Wallace").

FNBC filed proofs of claim in each of the three bankruptcy cases:

1.  Case no. 13-12200, *In re Prieto* - proof of claim 12 in the amount of  $2,165,150.75;

2.  Case no. 13-12201, *In re Mag 8* - amended proof of claim 4-3 in the amount of $1,892,588.88;

3.  Case no. 13-12202, *In re DITO* - proof of claim 5 in the amount of $2,881,451.66.

Edwards filed proofs of claim in each of the three bankruptcy cases alleging that he is due

attorney's fees and costs for representation of the Prietos, Mag 8, and DITO:

1.  Case no. 13-12200, *In re Prieto* - amended proof of claim 11-2 in the amount of $786,380.17;

2.  Case no. 13-12201, *In re Mag 8* - amended proof of claim 6-2 in the amount of $1,227,635.06;

3.  Case no. 13-12202, *In re DITO* - amended proof of claim 7-2 in the amount of $785,580.17.

Edwards proofs of claim reflect  that he spent a total of 232.85 hours representing the Prietos, Mag

8, and DITO.[15]   Prieto, Mag 8, and DITO filed Objections to Edwards' claims.

On September 4, 2013, the Prietos and Mag 8 filed  Requests for Removal of Civil Action[16]

which removed the case to the United States District Court for the Eastern District of Louisiana

("District Court").[17] The District Court judge transferred the cases to this Court on September 16,

---

[15] Edwards did not keep contemporaneous time sheets.   The time sheets attached to his proofs of claim were prepared by him and edited by his counsel.

[16] DITO Exh. 17.

[17] *Prieto v. First NBC Bank*, 13-5713, U.S.D.C., E.D.LA, and *Magnificent Eight LLC v. First NBC Bank*, 13-5714, U.S.D.C., E.D.LA.

2013.[18]  St. Angelo filed a Motion to Withdraw the Reference to the Bankruptcy Court which was granted due to a jury demand.[19]   The District Court judge referred the matter to Magistrate North.

The Prietos, Mag 8, and DITO did not seek to have Edwards approved as special counsel in their bankruptcy cases.  Edwards resigned from his representation of the Prietos and Mag 8 on October 11, 2013, after an argument with Prieto about past due rent on a Mag 8 condominium in which Edwards resided.[20]

On December 4, 2013, Mag 8 and the Prietos entered into Lawyer-Client Contingent Fee Agreements with Jacques Bezou and the Bezou Law Firm, which provides that his "fee will be 40% of any gross recovery prior to deduction of [costs]."[21]  The agreements also provide that "[a]ll fees, costs and compensation ... are subject to review and approval" of this Court.[22]

The Prietos and Mag 8 filed Applications to Employ Jacques Bezou and The Bezou Law Firm as special counsel,[23] which were granted by this Court with the condition that all compensation be subject to court review.[24]  To date,  Bezou and his firm have been reimbursed $8,000.00 in costs from the Prieto's estate.

---

[18] Adversary nos. 13-1091 and 13-1089.

[19] *Id.* at P-8,

[20] Exh. B.

[21] Exh. 29 and 30.

[22] *Id.*

[23] Case no. 13-12200, P-74; case no. 13-12201, P-55.

[24] Case no. 13-12200, P-78; case no. 13-12201, P-80.

DITO was never a party to the suits in either state or District Court.  Instead,  DITO filed an adversary Complaint in Bankruptcy Court against FNBC, FCB, and St. Angelo on  March, 31, 2014.[25]   DITO filed an application to employ Bezou and his firm as additional counsel in the adversary, which was granted by the Court.[26]

In July 2014, the Prietos, Mag 8, DITO, and FNBC entered a settlement agreement whereby:

1. FNBC agreed to reduce its claim against DITO to $1,100,000 at 4.5% interest for 25 years with a personal guarantees by the Prietos;

2. FNBC agreed to cancel its judicial lien against the Prietos;

3.  Mag 8 agreed to withdraw its objection to FNBC's Motion for Relief from the Automatic Stay so that FNBC could foreclose on its collateral; FNBC agreed to take all actions necessary to obtain ownership of the condo in which the Prietos reside and sell it to them for $140,000.  Mag 8 valued the collateral surrendered to FNBC at $575,000 on its schedules.[27] FNBC's Motion for Relief from the Automatic Stay assumed Mag 8's value for the property;[28]

4. Mag 8 and the Prietos agreed to dismiss the state and District Court suits;

5. DITO agreed to dismiss the adversary proceeding;

6. Mag 8, the Prietos, and DITO agreed to release FNBC from all liability, and FNBC agreed to release them from liability;

7. Each party would bear its own fees and costs.[29]

---

[25] Adversary no. 04-1014.

[26] *Id*. at P-9.

[27] Case no. 13-12201, P-1.

[28] Case no. 13-12201, P-140.

[29] Exh. 17.

7

On July 10, 2014, the Prietos, Mag 8, DITO, FCB, and St. Angelo entered into a settlement agreement whereby FCB and St. Angelo agreed to pay $166,625.00 in attorneys' fees and costs to the Prietos, DITO, and Mag 8, and in return, the claims against them would be released (both settlement agreements will be referred to collectively as "the Settlement").[30]   The debtors propose that the attorneys' fees be distributed as follows:

1. $100,000.00 to Bezou and the Bezou Law Firm;

2. $21,000.00 to DeLeo;

3. $11,500.00 to Gerdes;

4. $18,000.00 to Wallace.[31]

Prieto, Mag 8, and DITO filed motions for this Court to approve the Settlement.[32]   This Court approved the Settlement but ordered that all attorneys' fees and costs be paid into the registry of the Court pending a hearing on the Objection to Edwards' claim and the fee applications of DeLeo, Gerdes, and Wallace.[33]   Bezou and the Bezou Law Firm have not filed an application for fees.  However, the request for the award of their fees was included in the motions to approve the Settlement and were deferred to the hearing on these matters.

---

[30] Exh. 16.

[31] Case no. 13-12200, P-155; case no. 13-13301, P-154; and case no. 13-12202, P-168.

[32] *Id.*

[33] Case no. 13-12200, P-163; case no. 13-12201, P-178; case no. 13-12202, P-229.

## II.  Law and Analysis

An attorney under a contingency fee agreement may "recover whatever fee he has earned which is not clearly excessive, up to the contractual maximum."[34]  However, when more than one attorney has represented a client in the same matter, the attorneys must share one fee:

> [O]nly one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Prof. Responsibility. ... Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors.[35]

"Under Louisiana law, contingency fee contracts, like all other attorney fee contracts, are subject to review and control by the courts - most notably for reasonableness."[36]  Even in the case of a contingency fee contract, a court may reduce the fee if it is found to be "excessive and unreasonable under the circumstances."[37]  The attorney has the burden of proving that his fees are reasonable and not excessive.[38]

The Bankruptcy Code also grants this Court authority to review professional fees for reasonableness[39] and provides a nonexclusive list of factors to consider:

---

[34] *Saucier v. Hayes Dairy Products, Inc*., 373 So.2d 102, 117 (La. 1979).

[35] *Id*. at 118.

[36] *Langley v. Norton*, 2003 WL 21991643, *5 (E.D.La. 2003) (citing *O'Rourke*, 683 So.2d at 700.

[37] *Pharis & Pharis v. Rayner*, 397 So.2d 1295 (La. 1981).

[38] *Drury v. Fawer*, 590 So.2d 808, 811 (La.App. 4 Cir. 1991).

[39] 11 U.S.C. § 330(a)(1).

[T] court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[40]

The Bankruptcy Code does not allow compensation for "unnecessary duplication of services," services not "reasonably likely to benefit the estate," or services not "necessary to the administration of the case."

The Fifth Circuit uses the "lodestar" method to calculate attorneys' fees.[41]  The lodestar amount is calculated by multiplying the "number of hours reasonably expended" and "the prevailing

---

[40] 11 U.S.C. § 330(a)(3).

[41] *Shipes v. Trinity Industries*, 987 F.2d 311, 319–20 (5th Cir.), *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126, L.Ed.2d 450 (1993).

hourly rate in the community for similar work."[42]   "Section 330(a), the lodestar method, and

the Johnson factors work in conjunction with each other to guide the court's discretion."[43]

> "After calculating the lodestar, bankruptcy courts retain [ ] discretion to
> adjust the lodestar upwards or downwards to reflect their consideration of
> the Johnson factors." [*In re Pilgrim's Pride Corp.*, 690 F.3d 650, 654-55 (5th
> Cir. 2012)]; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719
> (5th Cir. 1974). *See also* 11 U.S.C. § 330(a)(2). ... [The Fifth Circuit] has
> clarified that Section 330(a), the lodestar method, and the Johnson factors
> work in conjunction with each other to guide the court's discretion.
> Because the four Johnson factors related to attorney skill and legal
> complexity are presumably fully reflected in the lodestar, those four factors
> can only form the basis for a fee enhancement in "rare and exceptional
> circumstances."[44]

The twelve (12) Johnson factors are:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3)
> The skills requisite to perform the legal services properly; (4) The preclusion of other
> employment by the attorney due to acceptance of the case; (5) The customary fee; (6)
> Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or
> other circumstances; (8) The amount involved and the results obtained; (9) The
> experience, reputation, and ability of the attorneys; (10) The "undesirability" of the
> case; (11) The nature and length of the professional relationship with the client; (12)
> Awards in similar cases.[45]

---

[42] *CRG Partners Group, L.L.C. v. Neary (In re Pilgrim's Pride Corp.),* 690 F.3d 650, 655
(5th Cir. 2012) (quoting *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987).

[43] *Asarco, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re ASARCO,
L.L.C.)*, 751 F.3d 291, 295 (5th Cir. 2014).

[44] *Id.* (citation omitted).  In *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 554-556, 130
S.Ct. 1662 (2010), the Supreme Court ruled that the lodestar may be adjusted upward in only
three (3) circumstances: (1) "the lodestar calculation does not adequately measure the attorney's
true market value"; (2) "the attorney's performance includes an extraordinary outlay of expenses
and the litigation is exceptionally protracted"; and (3) "exceptional delay in the payment of fees."
However, the Fifth Circuit held in *Asarco*, that "*Perdue* dealt with fee-shifting in civil rights
cases," and "did not overrule [Fifth Circuit] bankruptcy precedent authorizing fee enhancements
under other, albeit limited circumstances pursuant to Section 330(a)."  *Asarco*, 751 F.3d at 296.

[45] *Id.* (citation omitted).

### A. Edwards

Edwards has filed proofs of claims for legal fees and costs in the following amounts:

1. Case no. 13-12200, *In re Prieto* - amended proof of claim 11-2 in the amount of $786,380.17;

2. Case no. 13-12201, *In re Mag 8* - amended proof of claim 6-2 in the amount of $1,227,635.06;

3. Case no. 13-12202, *In re DITO* - amended proof of claim 7-2 in the amount of $785,580.17.

In the Settlement, St. Angelo and FCB agreed to pay the legal fees and costs of the Prietos, Mag 8, and DITO in the amount of $166,625.00. The debtors propose that the attorneys' fees be distributed as follows:

1. $100,000.00 to Bezou and the Bezou Law Firm;

2. $21,000.00 to DeLeo;

3. $11,500.00 to Gerdes;

4. $18,000.00 to Wallace.[46]

Bezou testified that during the settlement negotiations, he agreed to reduce his fee from the 40% contingency to a flat fee of $100,000 in order to benefit the debtors and their estates. This fee must be allocated to Edwards and Bezou in proportion to their contributions.

Neither Edwards nor Bezou kept contemporaneous time sheets because they anticipated payment on a contingency basis. Neither suggested an hourly rate, and no evidence of a customary hourly rate was introduced at trial.[47]

---

[46] Case no. 13-12200, P-155; case no. 13-13301, P-154; and case no. 13-12202, P-168.

[47] "Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar

12

When no evidence of prevailing market rates has been introduced at trial, "[t]he Court has discretion to determine a reasonable hourly rate and can rely on its own experience and knowledge of customary hourly rates in deciding a reasonable hourly rate."[48]

Experience, skill, and reputation are appropriate considerations in calculating hourly rate.[49] While Edwards has practiced law for 38 years, he testified that he has little to no experience in lender liability and malpractice. His lack of experience and skill showed in the petitions he filed.

The Original and First Amended Petitions filed by Edwards in state court were legally deficient and below the legal standard. FNBC filed a dilatory exception to the vagueness of those petitions under La. Code of Civ. Proc. art. 926. A petition is vague if it fails to (1) inform the defendant of "the nature of the cause of action" and (2) "include sufficient particulars for the defendant to be able to prepare his or her defense."[50] Edwards testified that he believed the Original and First Amended Petitions sufficient and purposefully left them broad. This Court finds them

---

lawsuits." *Epic Investments, Inc v. Omni Marine Services, Inc.*, 2009 WL 4930577, *2 (E.D.La. 2009).

[48] *In re Ritchey*, 512 B.R. 847, 868 (Bankr.S.D.Tex. 2014) (citations omitted). The Court notes that in *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 383 (5th Cir. 2011) (citation omitted), the Fifth Circuit stated that the "hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate." *McClain* and the cases on which it relies are distinguishable from the case at hand because in those cases, evidence of an hourly rate was introduced at trial, but the court substituted its own experience.

[49] *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541 (1984). *See also S&H Industries, Inc. v. Selander*, 2013 WL 6332993, *3 (N.D.Tex. 2013); *Epic Investments, Inc v. Omni Marine Services, Inc.*, 2009 WL 4930577, *2 (E.D.La. 2009).

[50] *Smart v. Gold, Weems, Bruser, Sues & Rundell*, 955 So.2d 263, 267, 2006-1414 (La.App. 3 Cir. 4/4/07).

13

woefully lacking.  Vale, without compensation, wrote and filed the Second Amended Petition adding the detail needed to overcome the exception of vagueness, and he included causes of action against St. Angelo that were absent from the Original and Amended Petition.

Vale and Jones were also worried that FNBC would file a peremptory exception.  Edwards testified that he was not concerned about this allegation but filed the Third Amended Petition to appease Vale and Jones.  Nevertheless, when the suit was in removed to federal court, FNBC filed Motions for Summary Judgment on the issue of peremption.

Allegations of prescription and peremption are peremptory exceptions.[51]  Peremption provides the time period in which "[u]nless timely exercised, the right is extinguished."[52]  Louisiana laws provides two (2) peremptive periods[53] for actions in legal malpractice: 1) a one-year period which runs from "the date of the alleged act, omission, or neglect" or "the date that the alleged act, omission, or neglect is discovered or should have been discovered;" and 2)  "in all events  such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect."[54]  "[T]he one-year time period from the date of the 'act, omission, or neglect' is peremptive

---

[51] La. C.C.P. 927.

[52] La. C.C. art. 3458.

[53]  The law is clear that both the one and three year periods are peremptive.  La. R.S. art. 9:5605(B).  *See also Naghi v. Brener*, 08-2527, 17 So.3d 919, 926 (La. 6/26/09).

[54] La. R.S. art. 9:5605(A).

when the client knows of the alleged malpractice."[55]  The latest that a malpractice claim can be brought is three years after the alleged malpractice, regardless of the date of discovery.[56]

The peremptive period for actions in legal malpractice does "not apply in cases of fraud, as defined in Civil Code Article 1953."[57]  However, claims of fraud in legal malpractice are "subject to the liberative prescriptive period of one year applicable to delictual actions and contained in La. C.C. art. 3492."[58]  Prescription in cases of fraud "commences to run from the day injury or damages is sustained.  Damage is sustained when the damage has "manifested itself with sufficient certainty to support accrual of a cause of action."[59]  Louisiana courts are split on whether the fraud exception applies to both the one and three-year peremptive periods.[60]

---

[55] *Smart v. Vazquez*, 119 So.3d 901, 908, 2012-1694 (La.App. 4 Cir. 6/12/13) (citing *Jenkins v. Starns*, 85 So.2d 612 2011-1170 (La. 1/24/12).

[56] *Zeno v. Alex*, 89 So.3d 1223, 1226 (La.App. 3Cir. 4/4/12).

[57] La. R.S. art. 9:5605(E).  La. C.C. art. 1953 provides:

Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction.

[58] *Shermohmad v. Ebrahimi*, 945 So.2d 119, 06-512 (La.App. 5 Cir. 10/31/06) (citation omitted).

[59] *Id*. (quoting *Cole v. Celotex Corp*., 620 So.2d 1154, 1156, 93-90 (La. 7/1/93).

[60] The Louisiana Appellate Courts for the Second and Third Circuits have ruled that the three-year peremptive period does not apply in cases of fraud, but the one-year peremptive period from the date of discovery still applies even if there is fraud.  *Orea v. Bryant*, 979 So.2d 687, 690, 43,229 (La.App. 2 Cir. 4/2/08);  *Zeno v. Alex*, 89 So.3d 1223, 1226 (La.App. 3Cir. 4/4/12).  On the other hand, the First and Fifth Circuits have ruled that the fraud exception applies to both the one and three-year periods. *Klein v. American Life & Casualty Co.*, 858 So.2d 527, 01-2336 (La.App. 1 Cir. 6/27/03);  *Shermohmad* v. Ebrahimi, 945 So.2d 119, 06-512 (La.App. 5 Cir. 10/31/06).  St. Tammany is in the First Circuit.  However, the District Court has followed the Second and Third Circuits. *Gulf South Medical & Surgical Institute, Inc. v. Eagan Ins. Agency,*

Edwards was retained on June 18, 2012, but he did not file suit until December 12, 2012. The Prietos claim that they became aware of the causes of action in October 2009, which would mean the causes of action were perempted three (3) years later in October 2012. However, they also contend that adding a cause of action for fraud extended the peremptive period for one (1) year, so had Edwards filed suit prior to October 2013, rather than waiting until December 2013, peremption would have been a defensible issue. Based on the facts, the Court concludes that the issues of prescription and peremption were serious, potential barriers to recovery. Edwards not only failed to recognize the importance of filing suit timely, but even the potential issue.

The case was settled prior to the outcome of FNBC's Motion for Summary Judgment based on peremption. This Court makes no ruling on whether alleging fraud in the Third Amended Petition would have saved the case from dismissal due to peremption. However, the Court finds that peremption was a serious issue that needed to be addressed, and but for the urging of Vale and Jones, Edwards would have not have filed the Third Amended Petition.[61]

Between July 18, 2012, and October 11, 2013, Edwards wrote two (2) deficient petitions. He only filed the Third Amended Petition at the urging of Vale and Jones. Edwards failed to include DITO as plaintiff in any of the petitions despite the fact that DITO was both the maker and guarantor on all the FNBC obligations. The only written discovery conducted by Edwards was a Qualified Written Request to FNBC. He spoke to two (2) potential witnesses but ordered no expert reports and took no depositions. Edwards did no analysis of damages, which was instead prepared by

---

*Inc.*, 2012 WL 1865734 (E.D.La. 2012).

[61] Edwards testified to his belief that no peremptive period could begin to run until notice of the alleged malpractice. The Court has found no legal basis for this belief.

Jones. Edwards' representation was deficient and showed an inability to recognize significant bars to successful litigation.

In addition, despite employment under a contingency contract, Edwards withdrew from representation abruptly in October 2013 when he failed to make the rent payment on a condo he occupied and leased from Mag 8. Edwards became incensed when Mag 8 requested the rent due. Mag 8 was in chapter 11 at the time, and Edwards had no right to occupy the premises without payment. He abruptly withdrew from representation while suit and Motion for Summary Judgment on the issue of peremption were pending without safeguarding his clients' interests.

Based on experience, the Court finds $150.00 is a reasonable hourly rate for the work performed by attorneys in the Parish of St. Tammany who have little to no experience with the legal issues involved.

Edwards' proofs of claim reflect that he spent a total of 232.85 hours representing the Prietos and Mag 8; 117.7 of those hours occurred prior to the involvement of Vale and Jones. The Court concludes that once Vale and Jones were involved, they carried the work load. Therefore, the Court finds that only 117.7 hours were reasonably expended in representation of the Prietos and Mag 8. No hours were reasonably expended in representation of DITO as Edwards failed to include DITO in the litigation.

Based on the hourly rate of $150.00 and 117.7 hours expended, the lodestar is $17,655.00. The Court has discretion to adjust the lodestar upwards or downwards based on the Johnson factors.[62]

---

[62] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 654-55 (5th Cir. 2012).

17

(1) Time and labor required:  The Court considered this factor in determining the number of hours reasonably expended and the customary hourly rate.

(2) Novelty and difficulty of the case:  This case presented novel and complex questions. However, Edwards did not and was not competent to handle the issues that were presented.

(3) Skills requisite to perform legal services properly: As previously discussed, Edwards performed the tasks he undertook in a deficient and dilatory manner.

(4) Preclusion of other employment: Edwards presented no evidence that this case precluded other employment.

(5) Customary fee:  This factor is reflected in the hourly rate used to calculate the lodestar.

(6) Whether the fee is fixed or contingent:  Although using the contingency fee agreement may result in a higher fee to Edwards, the other factors weigh against an upward adjustment.

(7) Time limitations imposed:  Edwards presented no evidence that would warrant adjustment of the lodestar.

(8) Amount involved and result obtained: Edwards obtained no results.  His pleadings were legally deficient, and without the assistance of other attorneys, it is unlikely that the Prietos, and Mag 8 would have reached a beneficial settlement.  DITO definitely would not have reached a settlement without the assistance of other attorneys because Edwards failed to include it in the litigation.

(9) Experience, reputation, and ability of the attorney:  This factor is reflected in the hourly rate used to calculate the lodestar.

(10) Undesirability of the case:  Edwards presented no evidence on this issue.

(11) Nature and length of the professional relationship with the client:  No evidence or facts warrant adjustment of the lodestar.

(12) Awards in similar cases: Edwards presented no evidence on this issue.

Based on the quality of the legal services performed by Edwards, specifically the deficiency of this pleadings, delay in the institution of suit, failure to recognize serious bars to bring the claim, lack of diligence in the formation of evidence of damages to be presented, withdrawal from representation while   Motion for Summary Judgment on peremption was pending without

18

substitution of counsel and with potential prejudice to his clients, the Court will reduce Edwards' fee to $10,000.00.

The Objection to Edwards' claim by DITO is sustained.  Edwards' claim against DITO is reduced to $0.00.

The Objections to Edwards' claims by Prieto and Mag 8 are sustained in part, and Edwards has an allowed aggregate claim of $10,000.00.  Since the Prietos paid Edwards a $10,000.00 retainer fee prepetition, Edwards may apply this retainer to his claim, and nothing further will be owed from the bankruptcy estates of Prieto and Mag 8 or the Settlement.

## B.  Bezou and the Bezou Law Firm

Bezou and the Bezou Law Firm prepared, received, and reviewed thousands of documents in written discovery; participated in seven (7) depositions; ordered three (3) expert reports and reviewed four (4) others; prepared and filed numerous pleadings in District Court; prepared and filed pleadings in the adversary proceeding; attended numerous status and settlement conferences in Bankruptcy and District Court; prepared settlement documents;  attended settlement conferences with Judge North; and incurred costs of $22,783.60.[63]

To facilitate settlement and in the best interest of his clients, Bezou and his firm agreed to fees of $100,000, to be apportioned between them and Edwards, and costs of $16,625.00.  Because his agreement with his clients was based on a contingency fee, he did not keep time sheets and has not suggested or provided evidence of an hourly rate.  The Bezou firm's summary of work admitted at trial details the work performed and provides that it spent "hundreds of hours" performing the

---

[63] Exh. 21.

19

work.[64]    Bezou also testified to the significant amount to work he and the Bezou firm performed.

Based on the description work performed, the Court finds it reasonable that the Bezou firm spent at

least 450 hours representing the Prietos, Mag 8, and DITO.

Bezou testified that 40% of the Bezou firm's case load is malpractice cases and at least 10%

of its case load is business litigation and lender liability.  Based on the expertise of the Bezou firm

in professional and lender liability, the Court finds $375.00 is a reasonable hourly rate for

experienced attorneys providing representation in this area of law in the Parish of St. Tammany.

Therefore, the lodestar is $168,750.00.

The Court has discretion to adjust the lodestar upwards or downwards based on the Johnson

factors.[65]

(1) Time and labor required:  The Court considered this factor in determining the number of
hours reasonably expended and the customary hourly rate.

(2) Novelty and difficulty of the case:  This case presented novel and complex questions
which were recognized and addressed by counsel.

(3) Skills requisite to perform legal services properly:  The Court considered this factor in
determining the appropriate hourly rate.

(4) Preclusion of other employment: Bezou and his firm presented no evidence that this case
precluded other employment.

(5) Customary fee:  This factor is reflected in the hourly rate used to calculate the lodestar.

(6) Whether the fee is fixed or contingent: Using the contingency fee agreement would result
in a higher fee to Bezou and his firm.   Over all, the settlement resulted in roughly a $1.1
million reduction in debt owed by the Prietos, Mag 8, and DITO.  Bezou's 40% contingency
fee would have been $440,000.   However, Bezou agreed to reduce his fee to $100,000 to
facilitate settlement and in the best interest of his clients.

---

[64] *Id.*

[65] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 654-55 (5th Cir. 2012).

20

(7) Time limitations imposed:  Bezou and his firm presented no evidence that would warrant adjustment of the lodestar.

(8) Amount involved and result obtained: Bezou and his firm worked diligently and skillfully to move the litigation forward and eventually obtained a settlement that is beneficial to his clients.   They agreed to a flat rate attorney fee in order to facilitate this settlement.

(9) Experience, reputation, and ability of the attorney:  This factor is reflected in the hourly rate used to calculate the lodestar.

(10) Undesirability of the case:  This case was undesirable because it was begun ineptly by another attorney, and the contingency fee would have to be shared.

(11) Nature and length of the professional relationship with the client:  No evidence or facts warrant adjustment of the lodestar.

(12) Awards in similar cases: Bezou and his firm presented no evidence on this issue.

Bezou has not requested an upward adjustment; on the contrary, he agreed to reduce his fee to $100,000.00 to facilitate settlement and in the best interest of his clients.  He also agreed to reduce his costs from $22,738.60  to $16,625.00.  Therefore, the Bezou firm is entitled to compensation from the Settlement for fees of $100,000.00 and costs of $16,625.00.

## C.  DeLeo

DeLeo requests in her Third Application for Fees and Expenses ("Third Application"), fees of 17,280.00 and expenses of $241.90.[66] The Court granted two (2) previous fee applications.  The first was for fees of $33,210.00 and expenses of $810.00.[67]   After applying the retainer and a payment made to her by the Prietos, the balance due on her first fee application is $6,764.10.[68]

---

[66] Exh. 26; case no, 13-12200, P-165.

[67] Case no. 3-12200, P-114.

[68] Exh. 26, ¶ 3.

21

The second application was for fees of $15,315.00 and expenses of $314.24.[69] The Prietos have made no payment on the second application.[70]

The Third Application represents that DeLeo worked 53.60 hours at $300.00 per hour and spent 8.0 hours traveling at $150.00 per hour.   After reviewing her attached time sheets, the Court finds that DeLeo reasonably expended 53.60 hours working and 8.0 hours traveling.  The Court also finds DeLeo's expenses to be reasonable.

Based on the Court's knowledge and experience, $300.00 per hour is a customary rate in a chapter 11 case, and travel is typically billed at half time.   Therefore, the lodestar amount is $17,280.00.  DeLeo introduced no evidence that would warrant up or downward adjustment.   The Court will grant DeLeo's Third Application for fees of $17,280.00 and expenses of $314.24.

DeLeo seeks for $20,000.00 of her compensation to be paid from the settlement.[71]  DeLeo participated in the settlement negotiations because the Settlement is the cornerstone of Prieto's plan of reorganization.  The Court approves this request.

### D.  Gerdes

Gerdes seeks fees of $15,624.00 and expenses of $253.00 in his Second Application for Compensation ("Second Application").[72]  The Court previously granted Gerdes fees and expenses of $11,004.00.[73]  Gerdes' hourly rate is $210.00 and the hourly rate of his paralegal is $70.00.  He

---

[69] Case no. 13-12200, P-133.

[70] Exh. 26, ¶ 3.

[71] Exh. 18.

[72] Case no. 13-12201, P-184.

[73] *Id.* at P-130.

expended 71.8 hours at $210.00 per hour, and his paralegal expended 7.8 hours at $70.00 per hour.

After reviewing Gerdes' time sheets, the Court finds the hours expended to be reasonable.  Also,

$210.00 is a reasonable rate for this chapter 11 case.  Therefore, the lodestar is $15,624.00.  Gerdes'

expenses are also reasonable.

Gerdes introduced no evidence that would warrant up or downward adjustment.  The Court

will grant Gerdes' Second Application for fees of $15,624.00 and expenses of $253.00.

Gerdes seeks for $12,000.00 of his compensation to be paid from the Settlement.[74]  Gerdes

participated in the settlement negotiations because the Settlement is the cornerstone of Mag 8's plan

to emerge from bankruptcy.[75]   The Court approves fees of $12,000.00 to Gerdes from the

Settlement.

### E. Wallace

For his representation of DITO in adversary 14-1014, Wallace seeks fees of $17,155.00 and

expenses of $415.29.[76] The Court previously approved the following compensation to Wallace for

his representation of DITO in its main bankruptcy case: 1) $14,850.00 in fees and $265.50 in

---

[74] Exh. 18.

[75] Mag 8 has not filed a plan of reorganization.  Under the settlement with FNBC, FNBC
will take ownership of Mag 8's condominium property.

[76] Case no. 13-12202, P-197.

expenses,[77] 2) $13,400.00 in fees and $447.51 in expenses on his Second Application,[78] and 3) $9,375.00 in fees and $511.40 in expenses on his Third Application.[79]

Wallace's hourly rate is $300.00 with $100.00 charged for travel. His application represents that he spent 51.75 working on the case and 6.5 hours traveling. His paralegals work at the rate of $80.00 per hour. One worked for 12.0 hours and the other worked for .25 hours. After reviewing Wallace's time sheets, the Court finds the hours expended and the amounts charged to be reasonable. Therefore, the lodestar is $17,155.00. Wallace's expenses are also reasonable.

Wallace introduced no evidence that would warrant up or downward adjustment. The Court will grant Wallace's Application for fees of $17,155.00 and expenses of $415.29.

Wallace also seek for $18,000.00 of his compensation to be paid from the Settlement.[80] The Court approves his request.

## III. Conclusion

The Objection to Edwards' claim by DITO is sustained. Edwards' claim against DITO is reduced to $0.00.

The Objections to Edwards' claim by Prieto and Mag 8 are sustained in part, and Edwards has an allowed aggregate claim of $10,000.00. This amount will be paid by application of the

---

[77] *Id.* at P-95.

[78] *Id.* at P-138.

[79] *Id.* at P-221.

[80] Exh. 18. The total amount sought by awards from the settlement is actually $18,000.00. *See* case 13-12202, P-229.

24

$10,000.00 retainer posted by the Prietos, and $0.00 is owed him from either the bankruptcy estates of Prieto and Mag 8 or the Settlement.

The Court approves Bezou and the Bezou Law Firm's fees of $100,000.00 and expenses of $16,625.00 to be paid from the Settlement.

The Court approves DeLeo's Third Application for fees of $17,280.00 and expenses of $314.24. $20,000.00 of DeLeo's compensation shall be paid from the Settlement.

The Court approves Gerdes' Second Application for fees of $15,624.00 and expenses of $253.00. $12,000.00 of Gerdes' compensation shall be paid from the Settlement.

The Court approves Wallace's Application for fees of $17,155.00 and expenses of $415.29. $18,000.00 of Wallace's compensation in the case shall be paid from the Settlement.

The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, October 21, 2014.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge